**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,            )
                                     )
                                     )
                    v.               )      2:20-cr-00063
                                     )
                                     )
CYNTHIA DEMNIAK,                     )
                                     )
                    Defendant.       )

## OPINION

**Mark R. Hornak, Chief United States District Judge**

Before the Court is Ms. Cynthia Demniak's Motion to Reduce Sentence Pursuant to 18

U.S.C § 3582(c)(1)(A)(i) ("Motion for Compassionate Release" or "Motion"). On November 19,

2020, this Court sentenced Ms. Demniak to a term of imprisonment of 28 months, followed by a

three-year term of supervised release. (ECF No. 35.) Ms. Demniak began her term of imprisonment

on January 22, 2021. (*Id.*) On September 2, 2021, Ms. Demniak filed this Motion, citing the

COVID-19 pandemic and her underlying health issues as "extraordinary and compelling reasons"

justifying her release. (ECF No. 48, at 1.) The Government filed a response in opposition, to which

Ms. Demniak replied. (ECF Nos. 53, 55.)

Based on the record before it, the Court concludes that Ms. Demniak has met the

requirement of administrative exhaustion and her motion is procedurally proper. However, the

Court concludes that Ms. Demniak's circumstances are not "extraordinary and compelling

reasons" as required for her release or sentence reduction under § 3582(c)(1)(A)(i). The Court

further concludes that even if Ms. Demniak had demonstrated "extraordinary and compelling

reasons" justifying her release, consideration of the sentencing factors set forth in § 3553(a)

counsels against granting that relief or any other reduction in or modification of her sentence at

1

this time. Accordingly, Ms. Demniak's Motion for Compassionate Release (ECF No. 48) is DENIED without prejudice.

## I.    **BACKGROUND**

On March 9, 2020, Ms. Demniak was charged by information with five counts of wire fraud and six counts of falsifying income tax returns. All eleven counts stem from a six-year period in which Ms. Demniak embezzled nearly a million dollars from her employer and then failed to report the money to the IRS as taxable income. (ECF No. 1.) Ms. Demniak waived her right to indictment and pleaded guilty to all counts on July 16, 2020. (ECF Nos. 10, 11.) On November 19, 2020, the Court imposed a sentence of 28 months at each of the eleven counts, to run concurrently, and to be followed by a term of supervised release of three years at each of Counts 1 through 5, and one year at each of Counts 6 through 11, with all supervised release periods to run concurrently. (ECF No. 35.) Ms. Demniak began serving her term of imprisonment on January 22, 2021. (*Id.*; ECF No. 48-4, at 2.) As part of her sentence, the Court also ordered restitution of $270,426—representing the amount owed to the IRS—and imposed a special assessment of $1,100. (ECF No. 35.) On February 3, 2021, the Court ordered additional restitution in the amount of $926,940—representing the amount Ms. Demniak embezzled from her employer. (ECF Nos. 41–42.)

On September 2, 2021, Ms. Demniak filed a Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 48.) In supporting briefing, Ms. Demniak asserts that she has a number of "serious medical conditions" and that she has "grown increasingly concerned about her elevated risk of severe illness, and even death, should she contract COVID-19." (ECF No. 49, at 4–6.) Ms. Demniak states that she has "at least" meningioma, "a slow growing tumor of the membranes surrounding the brain and spinal cord"; severe chronic migraines; essential

2

(idiopathic) hypertension; "[l]eg swelling, chest pain, shortness of breath, [and] high heart rate"; remission from breast cancer; severe tinnitus; hyperactive thyroid; and depression. (*Id.* at 4–5.) She further states that she has "recurring kidney stones, bladder issues, peripheral neuropathy (numbness and tingling from neck to feet), increasing difficulty walking and standing, and issues with her feet (including blisters and loss of her two big toenails)." (*Id.* at 5.) Ms. Demniak argues that at 61, her age further contributes to her increased risk of severe COVID-19. (*Id.* at 11.)

Ms. Demniak submitted a compassionate release request to the Warden at FPC Alderson on March 8, 2021, citing many of the medical conditions above and stating that she "is more susceptible to COVID than many." (ECF No. 48-11.) The Warden denied her request on April 15, 2021, concluding that her concerns about contracting COVID-19 did not warrant early release and determining that her stated medical conditions "did not meet the criteria for the categories as set forth in [Bureau of Prisons (BOP)] policy." (ECF No. 53-1.). Ms. Demniak's reply brief states that she filed a subsequent request to the BOP to be released to home confinement under the CARES Act. (ECF No. 55, at 10.) The BOP has apparently granted that request and Ms. Demniak is tentatively scheduled to be transferred to home confinement on November 22, 2021. (*Id.*)[1]

The Government filed its Response to Defendant's Motion to Reduce Sentence ("Response") on September 30, 2021. (ECF No. 53.) The Government contends that Ms. Demniak "has not demonstrated that her various medical conditions . . . are either sufficiently severe, or substantially increase the risk of grave consequences from contracting COVID-19." (*Id.* at 2.) The Government does not appear to dispute Ms. Demniak's account that she suffers from a range of

---

[1] Ms. Demniak argues that the BOP's decision to transfer her to home confinement does not moot her instant Motion. (ECF No. 55, at 10 n.4.) The Court recognizes that the relief available (and apparently, in progress) under the CARES Act may be temporary and is therefore distinguishable from the relief Ms. Demniak seeks here under the First Step Act. While the Court therefore agrees that Ms. Demniak's Motion is not moot, the Court concludes that it can consider Ms. Demniak's pending release by BOP to home confinement under the CARES Act as it determines whether "extraordinary and compelling reasons" exist for the Court to grant her release under the First Step Act.

medical ailments but argues that "her medical conditions have been managed well in the prison setting." (*Id.* at 1.) The Government also points to the fact that Ms. Demniak has received two doses of the Moderna COVID-19 vaccine, which it argues "will significantly mitigate" her risk of contracting COVID-19 or becoming severely ill should she suffer a breakthrough infection. (*Id.* at 7–8.) Finally, the Government takes the position that the serious nature of Ms. Demniak's crime and victim opposition to her release counsel against granting her Motion. (*Id.* at 8–9.)

## II.      LEGAL STANDARD

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007) (citing *United States v. DeLeo*, 644 F.2d 300, 301 (3d Cir. 1981)); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) (citing 18 U.S.C. § 3582(c)). One such specific authorization is the First Step Act's amendment of 18 U.S.C. § 3582. As amended, that provision allows a court to reduce a defendant's term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." § 3582(c)(1)(A)(i). In addition, the court must consider: (1) whether the defendant has exhausted the appropriate administrative remedies; (2) the factors set forth in 18 U.S.C. § 3553(a) to the extent that they apply; and (3) whether such a reduction is consistent with applicable U.S. Sentencing Commission policy statements. § 3582(c)(1)(A).

## III.     DISCUSSION

After analyzing the record before the Court, the Court concludes that while Ms. Demniak's Motion is properly before it, Ms. Demniak's stated medical conditions do not constitute "extraordinary and compelling reasons" for releasing Ms. Demniak or reducing her sentence, either on their own or in combination with the COVID-19 pandemic. The Court further concludes that even if Ms. Demniak had demonstrated that such medical conditions did constitute

"extraordinary and compelling" circumstances, releasing Ms. Demniak from custody or reducing or modifying her sentence at this time would be inconsistent with the § 3553(a) sentencing factors and would therefore be inappropriate. *Id.*

### A. <u>Administrative Exhaustion</u>

As a threshold question, the Court must determine whether Ms. Demniak has complied with § 3582(c)(1)(A)'s exhaustion requirement. Prior to petitioning a court for relief under § 3582(c), a defendant must first file an administrative request for compassionate release or a sentence reduction with the warden of the facility where the defendant is incarcerated. The defendant then has two options: they must either (1) "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (2) wait 30 days from the date on which the defendant filed an administrative request with the warden. § 3582(c)(1)(A). The Third Circuit has confirmed that either option, standing alone, is sufficient to satisfy the administrative exhaustion requirement. *See United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020) (explaining that "the statute states that [a] defendant may file [a] motion [in the district court] thirty days after the warden receives his request" regardless of whether the warden has denied the request within those thirty days).

Here, the Court concludes that Ms. Demniak has met the administrative exhaustion requirement. As part of her Motion for Compassionate Release, Ms. Demniak submitted a letter, dated March 8, 2021, that was sent by her attorney to the Warden at FPC Alderson, seeking compassionate release for Ms. Demniak under the First Step Act, or in the alternative, release to home confinement under the CARES Act. (ECF No. 48-11.) On April 15, 2021, the Warden at FPC Alderson sent a reply to Ms. Demniak, explaining that her request was being treated as a request for a Reduction in Sentence (RIS) or Compassionate Release under the First Step Act, and

denying such request. (ECF No. 53-1.)[2] The Warden's letter stated that Ms. Demniak's "concern about being potentially exposed to, or possibly contracting, COVID-19" did not warrant her release, and that the review of her medical records indicated that her medical conditions did not meet the criteria for early release under BOP policy. (*Id.*) Ms. Demniak filed her Motion for Compassionate Release with this Court on September 2, 2021. (*See* ECF No. 48.) As that date is more than 30 days after Ms. Demniak sent her request to the Warden at FPC Alderson on March 8, 2021,[3] the Court concludes that Ms. Demniak's Motion is now properly before the Court under the second option for administrative exhaustion defined in § 3582(c)(1)(A).

**B. "Extraordinary and Compelling Reasons"**

Next, the Court must determine whether Ms. Demniak's medical conditions, in light of her age and the COVID-19 pandemic, constitute an "extraordinary and compelling reason" that would permit this Court to release Ms. Demniak from prison or to reduce or modify her sentence under § 3582(c)(1)(A)(i). The Court concludes that they do not.

Section 3582 does not define the phrase "extraordinary and compelling reasons." *See* § 3582(c)(1)(A)(i). Instead, Congress delegated that task to the Sentencing Commission. 28 U.S.C. § 994(t) (stating that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). The Sentencing Commission defined "extraordinary and compelling reasons" under the pre-First Step Act version of § 3582(c)(1)(A)(i) in a policy statement contained in § 1B1.13 of the U.S. Sentencing Guidelines Manual (the "Guidelines")—

---

[2] The Warden's letter indicates that Ms. Demniak sent a follow-up letter on April 1, 2021, though this second letter does not appear to be in the record. (ECF No. 53-1.)

[3] The Warden's response indicates that Ms. Demniak's letter was received on March 9, 2021. (*Id.*). Given that nearly six months passed between when Ms. Demniak sent her letter to the Warden and when Ms. Demniak filed her Motion for Compassionate Release with this Court, this difference of one day is immaterial as to the exhaustion requirement.

relating to the BOP's discretion to reduce a prisoner's term of imprisonment—but the Commission has not updated the policy statement since the First Step Act became law. *See United States v. Rodriguez*, 451 F. Supp. 3d 392, 396 (E.D. Pa. 2020).

In *United States v. Andrews*, the Third Circuit recently explained that, given the lack of an updated applicable Sentencing Commission policy statement defining "extraordinary and compelling reasons," "the existing policy statement is not applicable—and not binding—for courts considering prisoner-initiated motions" for compassionate release. No. 20-2768, 12 F.4th 255, 259 (3d Cir. 2021). However, "although the policy statement is no longer binding, it still sheds light on the meaning of extraordinary and compelling reasons." *Id.* at 260. This is because "Congress legislates against the backdrop of existing law." *Id.* (quoting *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1890 (2019)). By "reenact[ing] the compassionate-release statute without any alterations to the phrase 'extraordinary and compelling reasons,'" Congress likely intended the phrase to retain the meaning that the Sentencing Commission gave it in its pre-First Step Act policy statement. *Id.* Therefore, in reviewing this Motion, this Court does not treat the provisions of U.S.S.G. § 1B1.13 and its Application Notes as "an ultimate binding authority," but the Court nonetheless considers them as a guide in its analysis. *Id.*

The Court concludes that, based on the record before it, Ms. Demniak's medical conditions and associated COVID-19-related risks do not constitute "extraordinary and compelling reasons" warranting a reduction in her sentence. 18 U.S.C. § 3582(c)(1)(A)(i). As Ms. Demniak points out in her Motion, the Application Notes to § 1B1.13 of the Guidelines outline two scenarios in which medical conditions can rise to an "extraordinary and compelling" level: (1) terminal illnesses, such as metastatic cancers, ALS, or end-stage organ disease, and (2) "serious physical or medical condition[s]" that "substantially diminish[] the ability of the [individual] to provide self-care"

7

within the prison environment, and "from which he or she is not expected to recover." § 1B1.13, cmt. n.(1)(A). Ms. Demniak's Motion seeks relief under option (2), the "non-terminal" option. (ECF No. 49, at 10.)

Ms. Demniak submitted prison medical records beginning in 2021 that along with her briefing present an extensive list of medical conditions. (ECF Nos. 49, 48-14.) Ms. Demniak's arguments, however, rely primarily on two specific conditions: her "poorly controlled, essential/idiopathic hypertension" and her past history and current risk of cancer. (*See* ECF No. 49, at 4–5, 11–12.) Specifically, Ms. Demniak has a history of aggressive breast cancer—currently in remission—and has been diagnosed with meningioma, "a slow-growing tumor of the brain and upper spine that may be cancerous." (*Id.* at 11–12.) She notes that these conditions are among those "recognized by the Centers for Disease Control and Prevention (CDC) as creating a heightened risk of severe illness or death from COVID-19," and cites cases where this Court relied on that same CDC guidance in finding "extraordinary and compelling reasons" for release. (*Id.* at 10 (citing *United States v. Gustafson*, Crim No. 15-73, 2020 WL 4877252 (W.D. Pa. Aug. 20, 2020); *United States v. Walls*, Crim No. 12-173, 2020 WL 6390597 (W.D. Pa. Nov. 2, 2020)).) Additionally, Ms. Demniak suggests that the COVID-19 "Delta variant" and the particular circumstances at FPC Alderson, where inmates are housed in dormitory-style units, have work details, and have a certain amount of freedom of movement, further increase her risk of contracting COVID-19. (ECF No. 49, at 12–13.) She argues that these environmental factors, together with her health conditions and her age (she is 61), constitute "extraordinary and compelling" reasons justifying her release. (*Id.* at 11, 13.)

In its response, the Government acknowledges that Ms. Demniak's medical records support her contention that she has a variety of medical conditions but argues that the records also

"demonstrate that her medical conditions are being well-treated medically with prescription medications, and do not impair her functionality." (ECF No. 53, at 6.) With respect to Ms. Demniak's history of cancer, the Government argues that because Ms. Demniak's cancer is currently in remission, it "does not present a medical condition that substantially diminishes her ability to provide self-care within a correctional environment," and cites cases denying compassionate release to individuals with a history of Hodgkin's Lymphoma and colon cancer. (*Id.* at 6–7 (citing *United States v. Gadsden*, No. 09-cr-305, 2021 WL 195267 (W.D. Pa. Jan. 20, 2021); *United States v. Mason*, No. 18-cr-329, 2020 WL 4034835 (W.D. Pa. July 17, 2020)).)

Finally, the Government argues that the risk of Ms. Demniak contracting or becoming severely ill due to COVID-19 is significantly mitigated as she has received two doses of the Moderna COVID-19 vaccine, in April and May 2021, respectively. (*Id.* at 7–8.) The Government also points to the relatively low number of cases at FPC Alderson, citing data from September 21, 2021, when there were reportedly 14 active cases of COVID-19 among inmates at FPC Alderson. (*Id.*) The Court notes that as of November 15, 2021, there are no active cases at FPC Alderson, considering both inmates and staff. Fed. Bureau of Prisons, "COVID-19 Cases" available at https://www.bop.gov/coronavirus/ (last updated Nov. 15, 2021).

The Court agrees with Ms. Demniak that it is appropriate to consider her medical conditions "against the backdrop of the CDC's guidance as to conditions that either place an individual at increased risk of severe illness should they contract the COVID-19 virus, or increase an individual's risk of becoming infected in the first place." (ECF No. 49, at 10 (citing *Walls*, 2020 WL 6390597, at *25).) As a preliminary matter, the CDC notes that "[t]he risk of severe COVID-19 increases as the number of underlying medical conditions increases in a person." *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention (last updated Oct. 14, 2021),

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The Court will therefore consider each of Ms. Demniak's conditions individually as well as their cumulative effect.

First, CDC data indicate that more than 80 percent of deaths occur in people over age 65. *Id.* The Court notes that Ms. Demniak is 61 years old and is therefore not in the highest risk age group, but the CDC explains that risk increases for people in their 50s, with further increases in each decade thereafter. *COVID-19 Risks and Vaccine Information for Older Adults*, Ctrs. for Disease Control & Prevention (last visited November 5, 2021), https://www.cdc.gov/aging/covid19/covid19-older-adults.html. Detailed CDC data show that individuals between the ages of 50 and 64 have a hospitalization rate 4 times higher than those between the ages of 18 and 29 and are 30 times more likely to die of the virus. *Risk for COVID-19 Infection, Hospitalization, and Death*, Ctrs. for Disease Control & Prevention (last updated Sept. 9, 2021), https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html. In contrast, individuals between the ages of 75 and 84 are 9 times as likely to be hospitalized as those between 18 and 29 and are 220 times as likely to die. *Id.* The Court does not minimize the increased risk that Ms. Demniak faces due to her age but notes that she is not in the highest risk category, and concludes that her age is not sufficient, on its own, to constitute an "extraordinary and compelling reason" for her release. *See Mason*, 2020 WL 4034835, at *3 ("[A]t age 61, Mr. Mason *may* be at a higher risk of severe illness should be contract the virus. However, he is less than the designated over age 65 at-risk category for COVID-19; thus, his age alone does not justify his requested release.")

Second, the CDC notes that "having a history of cancer may increase your risk," and points to the National Cancer Institute (NCI)'s webpage *"Coronavirus: What People with Cancer Should*

*Know*," which distinguishes between those individuals who currently have cancer and therefore "have a higher risk of severe illness from COVID-19," and those with a history of cancer, who *may* have an increased risk. (last visited Nov. 11, 2021), https://www.cancer.gov/about-cancer/coronavirus/coronavirus-cancer-patient-information. The NCI webpage indicates that people with blood cancers may be at a higher risk than those with solid tumors, as blood cancers can result in a depleted immune response. *Id.* And those who have recently received a treatment that suppresses the immune system, such as chemotherapy, may be advised to wait until their immune system recovers before receiving a COVID-19 vaccine, to ensure that the vaccine's efficacy is not reduced. *Id.*

Ms. Demniak's history involves breast rather than blood cancer, she is in remission, and her medical records indicate that she was treated with radiation and chemotherapy in 2012. (ECF No. 48-14, at 20.) Her case is therefore distinguishable from this Court's recent decision in *United States v. Saunders*, determining that Mr. Saunders, who was being actively treated with chemotherapy for stage IVb follicular lymphoma, met the criteria for "extraordinary and compelling" circumstances under the non-terminal option. No. 07-cr-294, 2021 WL 2619786, at *6 (W.D. Pa. June 23, 2021).[4] Instead, Ms. Demniak's history of cancer appears to be more akin to that which was rejected as an "extraordinary and compelling" circumstance in *Gadsden* and *Mason*. In *Gadsden*, the Court determined that "[a] history of [Hodgkin's Lymphoma] in 2005 (now in remission), does not present a medical condition that provides a basis for compassionate release." 2021 WL 195267, at *6. And in *Mason*, the Court similarly concluded that Mr. Mason's history of colon cancer, which had been in remission since 2005, did not "increase[] his risk of

---

[4] This Court ultimately denied Mr. Saunders' motion for compassionate release after finding that the § 3553(a) factors weighed against a reduction in his sentence. *Id.* at *13.

major complications from COVID-19" or "predispose[] him to more readily contract the virus." 2020 WL 4034835, at *3.[5] Based on the evidence before it, the Court cannot conclude that Ms. Demniak's history of cancer standing alone constitutes an "extraordinary and compelling reason" for her release.

Third, current CDC guidance states that "[h]aving heart conditions such as heart failure, coronary artery disease, cardiomyopathies, and *possibly* high blood pressure (hypertension) can make you more likely to get severely ill from COVID-19." *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention (last updated Oct. 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (emphasis added). This classification of hypertension is notably different than the CDC guidance around pulmonary hypertension, defined as high blood pressure in the lungs, which the CDC states unequivocally "can make you more likely to get severely ill from COVID-19." *Id.*; *see also United States v. Gray*, No. 13-cr-11, 2010 WL 5350444 (W.D. Pa. Sept. 4, 2020) ("Notably, most (though not all) COVID-19 release cases where hypertension has been considered

---

[5] Ms. Demniak also states that she suffers from meningioma, defined in her briefing as "a slow-growing tumor of the brain and upper spine that may be cancerous." (ECF No. 49, at 4.) The description of meningioma from Mayo Clinic, which Ms. Demniak submitted as Exhibit F, does not mention cancer but indicates that meningiomas are the "most common type of tumor that forms in the head" and that they "do not always require immediate treatment and may be monitored over time." (ECF No. 48-6, at 2.) The Court has reviewed the medical records Ms. Demniak submitted as Exhibit N and has concluded that there is no evidence that Ms. Demniak's specific meningioma is cancerous. (*See* ECF No. 48-14.) Instead, Ms. Demniak's meningioma appears to have been a chronic condition that her clinicians have been monitoring over time. Her records indicate that her last MRI was in 2019, (*id.* at 31), and records from an exam performed by Dr. Joseph Dickerson on January 25, 2021 state that Ms. Demniak reported that her migraines have been a chronic problem since childhood and that she had "a small brain tumor" in the back of her head, (*id.* at 16). Elsewhere, Ms. Demniak's medical records indicate that she reported a history of a brain tumor but denied symptoms when she was examined on February 10, 2021, and that on February 22, 2021, Dr. Joseph Dickerson diagnosed her with "[b]enign neoplasm of central nervous system, unspecified, D339 – Current – meningioma?". (*Id.* at 21, 26). These records do not demonstrate, or even suggest, that Ms. Demniak's meningioma is cancerous, and Ms. Demniak has not suggested any other reason why her meningioma might predispose her to infection or severe complications from COVID-19.

a significant risk factor involve a defendant with **pulmonary** hypertension, or hypertension in connection with other cardiovascular, **pulmonary**, respiratory, or immunological conditions.")

Perhaps reflecting the continued medical uncertainty about the association between hypertension and severe COVID-19 and the constantly changing circumstances of the pandemic, the caselaw does not reflect a uniform consensus as to whether hypertension provides an "extraordinary and compelling reason" for compassionate release. On the one hand, Ms. Demniak's brief provides a set of cases from other districts in which judges have concluded that the increased risk of severe COVID-19 due to hypertension constitutes a "extraordinary and compelling reason" for release and argues that this Court should conclude the same is true in her case. (ECF No. 49, at 11–12 (citing, e.g., *United States v. Soto*, No. 18-cr-10086, 2020 WL 2104787, at *2 (D. Mass. May 1, 2020); *United States v. Scparta*, No. 18-cr-578, 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020); *United States v. Sawicz*, No. 08-cr-287, 2020 WL 1815851 (E.D.N.Y, Apr. 10, 2020).) The Court notes that some courts in this district have reached the same conclusion. *E.g.*, *United States v. Somerville*, 463 F. Supp. 3d 585, 597–98 (W.D. Pa. 2020).[6] But other courts have denied compassionate release in cases where the defendant argued that their hypertension put them at increased risk of COVID-19, and panels of the Third Circuit have declined to disturb those findings on appeal. *E.g.*, *United States v. Hicks*, No. 15-cr-236, Docket No. 110, at 5–6 (W.D. Pa. Nov. 30, 2020), *aff'd*, No. 20-3513, 2021 WL 4316829, (3d Cir.

---

[6] This Court itself determined that "extraordinary and compelling" circumstances were present where an inmate suffered from hypertension in addition to type 2 diabetes mellitus with diabetic neuropathy and obesity. *United States v. Coleman*, No. 16-cr-139, 2020 WL 6334784, at *6 (W.D. Pa. Oct. 29. 2020). In *Coleman*, however, this Court concluded that in addition to Mr. Coleman's hypertension, which *might* put him at increased risk, he suffered from two conditions in type 2 diabetes and obesity that *did* put him at increased risk. *Id.* As such, *Coleman* is not controlling of Ms. Demniak's Motion.

Sept. 23, 2021); *United States v. Coleman*, No. 12-cr-295, Docket No. 177, at 9–10 (E.D. Pa. Oct. 13, 2020), *aff'd per curiam*, 848 F. App'x 65 (3d Cir. 2021).

The Government does not appear to dispute that hypertension can in some cases rise to the "extraordinary and compelling" level but argues that Ms. Demniak's medical conditions, including her hypertension, "are being well-treated medically with prescription medications" at FPC Alderson. (ECF No. 53, at 6.) Ms. Demniak's medical records reflect that she takes Lisinopril (an ACE inhibitor) daily for her hypertension. (ECF No. 48-14, at 6–7.) They also reflect that FPC Alderson has regularly monitored her high blood pressure—one document shows that on January 25, 2021, Dr. Dickerson ordered it taken twice weekly, and a different report generated on March 26, 2021 reflects that prison health officials took Ms. Demniak's blood pressure 22 times between January 25, 2021 and March 18, 2021. (*Id.* at 17, 24–25.)[7] Many of the readings taken during this period reflect levels that would put Ms. Demniak in the High Blood Pressure (Hypertension) Stage 2 category as defined by the American Heart Association, falling in between Stage 1 Hypertension and Hypertensive Crisis. *Understanding Blood Pressure Readings*, American Heart Association (last visited Nov. 10, 2021), https://www.heart.org/en/health-topics/high-blood-pressure/understanding-blood-pressure-readings. It is not clear to the Court whether Ms. Demniak's blood pressure is "under control"—she argues that it is not—but the Court does agree with the Government that Ms. Demniak is receiving persistent evaluation and care for her hypertension, including both monitoring and prescription medication. Moreover, it is not obvious

---

[7] None of the medical records Ms. Demniak submitted appear to relate to treatment received after March of 2021, though it is not clear from the record whether that reflects a lack of treatment, a gap in medical records, or a gap in what was submitted.

what additional care Ms. Demniak would receive if she were released, and her briefing does not suggest any.

Ultimately, the Court concludes that while under certain circumstances, hypertension similar to Ms. Demniak's could raise to an "extraordinary and compelling" level, it does not do so here considering the totality of the circumstances.[8]  Here's why.

First, as the Government points out, Ms. Demniak has received two doses of the Moderna mRNA COIVD-19 vaccine, and data on the effectiveness of such vaccines suggests that she would be well protected against serious illness or hospitalization from the virus were she to contract it. *Moderna COVID-19 Vaccine Overview and Safety*, Ctrs. for Disease Control & Prevention (Oct.

---

[8] Ms. Demniak also asserts that she suffers from a range of additional medical conditions, including severe chronic migraines; "[l]eg swelling, chest pain, shortness of breath, [and] high heart rate"; severe tinnitus; hyperactive thyroid; depression; "recurring kidney stones, bladder issues, peripheral neuropathy (numbness and tingling from neck to feet), increasing difficulty walking and standing, and issues with her feet (including blisters and loss of her two big toenails)." (ECF No. 49, at 4–5.) Many but not all of these conditions are facially apparent in Ms. Demniak's medical records, through what appear to be documents containing her medical history. (*See, e.g.*, ECF No. 48-14, at 26.) But neither the records nor Ms. Demniak's briefing provide the requisite detail on the severity and/or currentness of these conditions for the Court to determine whether they rise to an "extraordinary or compelling" level. The Court also notes that with the exception of depression, which was recently added, none of the remaining conditions appear on the CDC's list of conditions that have the potential to make individuals more susceptible to COVID-19. *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention (last updated Oct. 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html;   Jenna Portnoy, *Vaccine eligibility for mood disorders underscores elevated covid risk*, The Washington Post (Oct. 27, 2021, 7:49 AM), https://www.washingtonpost.com/local/mental-disorder-cdc-covid-eligibility/2021/10/27/2a45eea0-32ae-11ec-9241-aad8e48f01ff_story.html. And with respect to depression, there is nothing more for the Court to go on that the mere fact of that diagnosis.

The Court also notes that Ms. Demniak's briefing makes reference to her role as a caretaker for her husband and her parents prior to her incarceration. The U.S.S.G. § 1B1.13 provisions and Application Notes describe another category of circumstances, separate from the defendant's medical conditions, that may provide "extraordinary and compelling reasons" for a sentence reduction: the defendant's family circumstances. § 1B1.13, cmt. n.(1)(C). Specifically, the Application Notes provide that "[t]he incapacitation of the defendant's spouse . . . when the defendant would be the only available caregiver for the spouse" is an extraordinary and compelling reason to reduce the defendant's sentence. § 1B1.13, cmt. n.(1)(C)(ii). A need to care for Ms. Demniak's parents would not appear to be covered by this provision, and in any event, Ms. Demniak does not appear to argue for her release based on a claim that either her husband or parents meet the incapacitation requirement, but rather points to her prior caretaking role as a personal characteristic relevant to sentencing under § 3553(a)(1). As such, the Court does not decide the issue of whether the condition and needs of Ms. Demniak's husband constitute an "extraordinary and compelling reason" for her release.

28, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Moderna.html. Second, the most recent data from FPC Alderson shows that there are not currently any active cases at that facility, considering both inmates and staff. Fed. Bureau of Prisons, "COVID-19 Cases" available at https://www.bop.gov/coronavirus/ (last updated Nov. 15, 2021). While the Court does not agree with the Government's assertion that the risk Ms. Demniak faces from COVID-19 has been "virtually eliminated," (ECF No. 53, at 7), the Court does conclude that the risk to Ms. Demniak at FPC Alderson is not particularly severe or acute at this time. And while the Court would not deny compassionate release based on the concept that a defendant is "safer" while in prison if such release were otherwise appropriate, it is also not clear that Ms. Demniak is at higher risk of COVID-19 infection or severe illness at FPC Alderson than she would be in the community—Fayette County, Pennsylvania, where Ms. Demniak resided at the time she was sentenced, has recently seen its highest numbers of new COVID cases since January of 2021 and has a vaccination rate seven percentage points below the state average. *Tracking Coronavirus in Pennsylvania: Latest Map and Case Count*, N.Y. Times (last visited Nov. 12, 2021), https://www.nytimes.com/interactive/2021/us/pennsylvania-covid-cases.html.

Finally, Ms. Demniak reports in her reply that the BOP has granted her request to be transferred to home confinement under the CARES Act, and such transfer is tentatively scheduled to occur on November 22, 2021. Ms. Demniak is correct that such relief does not moot her instant Motion as such form of CARES Act relief may be temporary and is therefore distinguishable from the relief she seeks here under the First Step Act. The Court concludes, however, that the imminent prospect of Ms. Demniak's transfer to home confinement, when combined with her vaccination status and the current absence of COVID-19 at FPC Alderson, does tend to negate any potentially "extraordinary and compelling" nature of her current situation. In addition to mitigating any

heightened risk due to communal living at FPC Alderson, Ms. Demniak's pending release would seem to permit her to see her usual medical professionals for any ongoing concerns she feels are not being addressed by the BOP medical staff. The Court therefore concludes that at this time the medical conditions Ms. Demniak suffers from do not rise to the level of "extraordinary and compelling," either on their own, in combination, or when considered in conjunction with the COVID-19 pandemic. Given that the Court is denying Ms. Demniak's Motion without prejudice, she will be able to file an amended motion should she be returned to BOP custody and if her medical situation would support such a renewed motion.

### C.  The § 3553(a) Factors

Even if the Court were to find that the record now before it demonstrates "extraordinary and compelling reasons warrant[ing] [] a reduction" in Ms. Demniak's sentence, the Court concludes that there is not at this juncture and on this record a basis to release Ms. Demniak or to reduce or modify her imposed sentence, considering the 18 U.S.C. § 3553(a) factors for imposition of a sentence. § 3582(c)(1)(A).

The determination of "whether to reduce an eligible defendant's term of incarceration for compassionate release after considering the § 3553(a) factors is committed to the discretion of the [district court]." *United States v. Jones*, No. 12-cr-38, 2020 WL 3871084, at *4 (W.D. Pa. July 8, 2020) (citing *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020)). That discretion includes the district court's authority to consider the length of the defendant's original custodial sentence, including the portions served and remaining, when weighing the § 3553(a) factors. *Pawlowski*, 967 F.3d at 330–31. "In considering the section 3553(a) factors, [the Court] should assess whether those factors outweigh [any] 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of

the original sentence." *United States v. Bess*, 455 F. Supp. 3d 53, 66 (W.D.N.Y. Apr. 22, 2020) (citation omitted).

Thus, if the Court were to conclude that there were the requisite "extraordinary and compelling" circumstances in Ms. Demniak's case, the Court would next need to address whether requiring Ms. Demniak to serve the remainder of her sentence is a punishment that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing given those circumstances. 18 U.S.C. § 3553(a). In her briefing, Ms. Demniak argues that her crimes were the product of a compulsive gambling addition, a condition which she has made considerable progress in treating both before and after beginning her sentence. (ECF No. 49, at 4.) She states that she has not set foot in a casino since November 2018 and that her Pattern Risk Score for recidivism is -21, corresponding to an overall risk level of "Minimum." (*Id.*; *see also* ECF No. 48-5.) Additionally, Ms. Demniak reports that she has maintained a work detail in the FPC Alderson library, has completed institutional coursework, and is a member of the "Suicide Watch Prevention Team." (ECF No. 49, at 4.) According to her briefing, she has no disciplinary infractions and is on track to earn 125 days of good time credit. (*Id.*) The Government argues in response that Ms. Demniak committed serious crimes by embezzling hundreds of thousands of dollars from her employer and adds that Ms. Demniak's victims remain staunchly opposed to her release. (ECF No. 53, at 8–9.)

On the record now before the Court, considering the § 3553(a) factors, and considering them in the context of the circumstances Ms. Demniak now advances, the Court concludes that Ms. Demniak's original sentence of 28 months of imprisonment, followed by 36 months of supervised release, remains necessary to fulfill the purposes of sentencing. In particular, based on the record before it, the Court finds significant the need for Ms. Demniak's sentence "to reflect the seriousness of the offense" and "to afford adequate deterrence to criminal conduct." § 3553(a)(2).

As of the filing of her Motion, Ms. Demniak had served just 8 months of her 28-month sentence (she has now served between 9 and 10 months). The 28-month sentence reflects that Ms. Demniak pleaded guilty to serious crimes—she embezzled nearly a million dollars from her employer and deprived the United States of more than $270,000 in duly-owed tax revenue. (*See* ECF No. 7-1.) In fact, the guideline range at the time of sentencing was a term of imprisonment of 41 to 51 months. (ECF No. 49 at 3.) As Ms. Demniak notes in her brief, the Court "depart[ed] significantly downward from the guideline range." (*Id.*)[9] In doing so, the Court considered Ms. Demniak's acceptance of responsibility, her lack of criminal history, and the circumstances under which she committed her crimes. Ms. Demniak now points to those very same factors in asking the Court to further reduce her sentence by nearly 60 percent.[10]

The Court does not agree that such a reduction would be appropriate. In short, with the exception of her report of continued self-restraint and good behavior at FPC Alderson, Ms. Demniak's current briefing puts forth very little information that was not available to the Court when it reached its initial sentencing decision. The circumstances of Ms. Demniak's offense conduct and her personal situation were well known to the Court at the time of her sentencing—the sentencing

---

[9] As a matter of precision, the imposition of a custodial sentence below the now-advisory Sentencing Guidelines was by virtue of a sentencing variance as opposed to a sentencing departure.

[10] Ms. Demniak cites *United States v. Dana* for the proposition that "crimes committed while in the throes of addiction are different, and this factor should be construed as a mitigating circumstance weighing in favor of relief under the First Step Act." (ECF No. 49, at 15 (citing 467 F. Supp. 3d 962 (D. Or. 2020)).) As a preliminary matter, the Court does not agree with Ms. Demniak that the "*only* significant difference" between her case and Mr. Dana's is the percentage of sentence served, (*Id.* at 16 (emphasis added)), because the Court must consider the § 3553 factors in the context of the purported "extraordinary and compelling" circumstances put forth by the Defendant, *Bess*, 455 F. Supp. 3d at 66, and Ms. Demniak does not explain in any detail whether her circumstances are comparable to those faced by Mr. Dana. The Court does agree with Ms. Demniak, however, that the difference in time served is significant. Ms. Demniak's briefing suggests that with projected good time credit, she can be expected to serve roughly 24 months. (ECF No. 49, at 16.) By the Court's count, it has now been just under 10 months since Ms. Demniak began serving her sentence. She has therefore served approximately 40 percent of her projected custodial sentence, just half of 80 percent that had been served by Mr. Dana at the time of his release. With respect to the § 3553(a)(2) factors, including the need to reflect the seriousness of the offense and the need for adequate deterrence, the Court concludes that it does make a significant difference that Ms. Demniak is much farther from completing her sentence than was Mr. Dana.

memorandum she submitted provides excerpts of letters from family and friends detailing the personal challenges Ms. Demniak faced in her life, the shock to those around her when they learned of her crimes, and her efforts to recover from her addiction. (*See* ECF No. 26.) Her family circumstances and many of her health challenges were also reflected in the sentencing memorandum and pre-sentence report prepared by Pretrial Services. (*See id.*; ECF No. 18.) The one notable exception is her high blood pressure, but as the Court concluded above, Ms. Demniak is receiving treatment for that condition and it does not rise to the level of "extraordinary and compelling" under the totality of the circumstances.

Moreover, while Ms. Demniak argues that "time served in the context of a deadly, global pandemic is of a fundamentally different—and far more punitive—nature" than time served outside of that context, this Court originally imposed Ms. Demniak's sentence in late November of 2020, with full knowledge of and regard for the ongoing pandemic. The Court therefore concludes that for the same reasons as the Court relied upon in imposing Ms. Demniak's original sentence, reducing Ms. Demniak's sentence at this time would not adequately reflect the seriousness of her conduct or provide adequate deterrence of such conduct, particularly to others. The Court further concludes that serving the remainder of her sentence is a punishment that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing. 18 U.S.C. § 3553(a).

## IV.     **<u>CONCLUSION</u>**

The Court has considered the parties' pleadings and other relevant information in the record, the relevant factors set forth in § 3582(c), the applicable Sentencing Commission policy statements, and the § 3553(a) factors. Having done so, the Court concludes that while Ms. Demniak's Motion is properly before it, Ms. Demniak has not demonstrated "extraordinary and compelling reasons" for her early release, and that even if she had, on the record as it now exists, her release would be improvident based on the factors the Court must consider under § 3553(a). Accordingly, Ms. Demniak's Motion to Reduce Sentence Pursuant to 18 U.S.C § 3582(c)(1)(A)(i) (ECF No. 48) is DENIED without prejudice to its reassertion if further facts support it.

An appropriate Order will issue.

_s/ Mark R. Hornak _____
Mark R. Hornak
Chief United States District Judge

Dated: November 16, 2021
cc:     All counsel of record